## NEELY *v.* LOUISVILLE AND SOUTHERN INDIANA TRACTION COMPANY.

[No. 8,045. Filed June 24, 1913.]

1. CARRIERS.—*Injuries to Passengers.—Proximate Cause.—Contributory Negligence of Third Persons.*—Although a carrier is not liable for an injury to a passenger caused solely and proximately by the unauthorized, unforeseen and independent act of another passenger, if the servants of the carrier were also guilty of negligence which was a proximate cause, or was directly connected with the proximate cause of such injury, the fact that an act of a passenger also contributed thereto will not in and of itself relieve the carrier from liability. p. 664.

2. CARRIERS.—*Injuries to Passengers.—Degree of Care Required.—Receiving and Discharging Passengers.*—While a common carrier of passengers is not an insurer of their safety, it must exercise the highest degree of care consistent with the mode of its conveyance and the practical prosecution of its business for the safety and protection of its passengers, and the conductor in charge of a train or car is bound to know, if by the exercise of due care he could know, whether any person is attempting to get on or off his train or car before permitting the same to start in such manner as to injure the person so getting on or off. p. 665.

3. CARRIERS.—*Carriage of Passengers.—Commencement of Relation.—Boarding Street Car.*—By stopping its car, on the signal of a person desiring to take passage thereon, at a point where it is required to receive passengers, a street car company extends an invitation to him to become a passenger and he has a right to enter, and as soon as he steps upon the running board or steps of the car he becomes a passenger, and the company is bound to treat him as such. p. 666.

4. CARRIERS.—*Carriage of Passengers.—Duty of Carrier.—Opportunity to Board Car.*—It is the duty of a common carrier operating a street car to give to persons, intending to become passengers thereon at its usual stopping places, a reasonable opportunity to board the same. p. 666.

5. NEGLIGENCE.—*Trial.*—*Question for Jury.*—Ordinarily negligence is a question of fact for the jury to determine, and it is only when the standard of duty is fixed and certain, or where the negligence is so clear and palpable that no verdict could make it otherwise, that the question of negligence becomes one of law. p. 666.

6. TRIAL.—*Directing Verdict.*—*Requisites of Instruction.*—Where the court directs a verdict in the event the jury finds from the evidence certain facts to exist, the instruction should embrace all the facts and conditions essential to such a verdict. pp. 667, 668.

7. CARRIERS. — *Injuries to Passengers.* — *Instructions.* — *Ignoring Issues.*—In an action for injuries to a person attempting to board a street car, an instruction that if, while the conductor was going back to the rear platform to see if plaintiff was safely on board, the car was started upon a signal given by a passenger, which the motorman supposed was given by the conductor, the company was not liable, was erroneous in ignoring the possibility of defendant's agents being guilty of negligence in other respects which may have contributed to cause the injury. pp. 667, 668.

8. TRIAL.—*Erroneous Instructions.*—*Cured by Other Instructions.* —An instruction which in effect directs a verdict if certain facts are found to exist, but which is erroneous for omitting an element essential to such verdict, cannot be cured by other instructions given in the case. p. 669.

9. APPEAL.—*Harmless Error.*—*Burden of Showing.*—Where error is shown in giving an instruction, the presumption arises that it was prejudicial and the burden is on the appellee to show by the record that it was harmless. p. 670.

10. APPEAL.—*Harmless Error.*—*Erroneous Instructions.*—*Answers to Interrogatories.*—Error in the giving of an instruction as to the liability of a street car company to one who was injured while attempting to board its car, which stated that defendant would not be liable, if the starting signal was given by a passenger while the conductor was making his way to the rear platform to see if plaintiff was safely on board, and which ignored the possibility of other negligence by the defendant's servants which may have been a proximate cause of the injury, is not cured by the jury's answers to interrogatories which are silent on the question of the negligence of defendant's servants and which merely found the existence of the particular facts stated in the instruction as sufficient to warrant a verdict for defendant. p. 670.

11. APPEAL.—*Harmless Error.*—*Erroneous Instructions.*—*Applicability to the Evidence.*—The court on appeal will not weigh the evidence to determine if error in the giving of an instruction

was harmless, but if the undisputed evidence shows that the injury received by one attempting to board a street car was caused solely by the act of a passenger in giving the starting signal, and that there was no negligence by defendant's agents, then a reversal would not be ordered on the ground that the court, in instructing that a verdict for defendant was authorized if the injury was caused by the act of a passenger in giving the starting signal, erred in ignoring the possibility of any negligence by defendant's agents which may have been a proximate cause of such injury.  p. 670.

12.  APPEAL.—*Harmless Error.—Erroneous Instructions.—Applicability to Evidence.*—In an action for injuries received while attempting to board a street car which started on a signal given by a passenger, evidence that the car started very suddenly with a jerk and threw plaintiff to the ground, was susceptible to the inference that in the manner of starting the car defendant's agents did not exercise the degree of care required of them, so that the error in an instruction which ignored the possibility of negligence by defendant's servants was not harmless.  p. 671.

From Floyd Circuit Court; *William C. Utz,* Judge.

Action by Elizabeth Neely against the Louisville and Southern Indiana Traction Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Ewing & Roose* and *Stotsenburg & Weathers,* for appellant.

*Charles D. Kelso,* for appellee.

HOTTEL, P. J.—This is an appeal from a judgment in favor of appellee in an action brought against it for damages for injuries alleged to have been sustained by appellant when attempting to board one of appellee's cars, at the intersection of Wenzel and Jefferson Streets, in the city of Louisville, Kentucky. The issues of fact were presented by a complaint and a general denial. A motion for a new trial was overruled and this ruling presents the only error assigned and relied on for reversal. The only grounds of this motion presented and argued are those which predicate error upon the giving of instructions Nos. 1 and 2 respectively, tendered by appellee. Before setting out either of these instructions we will indicate those averments of the

complaint which charge the negligence relied on, they, alone, being necessary to an intelligent understanding of the questions herein discussed and determined. These averments are as follows: "Plaintiff further avers that while she was so attempting to enter upon said car for the purposes heretofore alleged, and at the time when she so had one foot upon said step of said car and so had hold of said handholds as heretofore alleged, and before she had had time to step upon said car, or the platform or step thereof, the said motorman and agents and servants of said defendant then in charge of and operating said car carelessly and negligently, and without warning to this plaintiff suddenly and rapidly started said car forward with a sudden and violent jerk, thereby throwing and jerking this plaintiff off her feet, and said step, and violently throwing her to the street and ground and dragging her thereon and injuring her."

We will at this point also indicate some of the evidence to which said instructions were applicable and to which we will desire to refer in our disposition of the questions presented. The appellant testified to substantially the following facts among others: She started home from Louisville between 5 and 6 p. m.; went to the corner of Wenzel and Jefferson Streets to catch her car. She had her four year old daughter with her and was carrying two pasteboard suit boxes each being about two feet long and three inches thick, and strapped together. As the car approached she signaled it to stop, and it stopped "on the northeast corner. You always stop on * * * the north side of Jefferson and the east side of Wenzel." The car was crowded. The vestibule where she entered was narrow, with three steps leading up to it and there were four men on the back platform. She lifted the little girl up, some gentleman helping her, put the boxes on the step and started to get on, and (using her words) "put one foot on the step and one hand on the side, and looked up to see if some one would not help me

on, and then it seems the car started, just *gave a jerk* * * * *suddenly,* yes, *with a jerk* * * * I don't remember what · happened. As soon as the car started, I remember it started, and the first thing I remembered was I was on the ground, and it seemed as though my limb was doubled under me, and I remember my limb and my head hurt me a good deal at the time.'' Other witnesses testified to substantially the same facts with reference to appellant's placing her child and packages on the car, and the manner of her attempting to get on. A witness, Minnie Reynolds, testified that the car started *"very suddenly."* Robert W. Waite in an affidavit for continuance, made on appellee's behalf and introduced in evidence, stated in substance that a witness Rittger if present would testify that he was one of four persons on the rear platform. ''The car was stopped on the north side of the intersection of said Wenzel and Jefferson Streets for the purpose of allowing the plaintiff, Elizabeth Neeley to board the same; that while she was attempting to board the car, and while she had one foot on the lower step and one foot on the ground, the car was *suddenly started* forward and by such forward motion, caused the plaintiff to be thrown to the ground, that the reason why said car started up was because another passenger, whose name to said H. Rittger, was not known, suddenly reached up, caught hold of the bell cord and pulled the same twice, thereby ringing the starting bell twice in the front platform and notifying and causing the motorman to put the car in motion before the plaintiff had safely got on board.''

According to appellant's contention the sole question in issue between the parties on the trial of the cause, except the extent of the injuries, was whether appellee exercised the highest degree of practical care and diligence for appellant's safety while she was attempting to board the car at the time she was injured. Appellee puts the issue in a little different language when it says that ''its defense

* * * is based upon the one ground that the accident to the appellant was caused by the unauthorized * * * and unapprehended * * * act of * * * a passenger standing on the rear platform" of its car. This is, in effect, stating the same issue in different language only, because, while the appellee could not be charged with an injury to appellant, for which an act of one of its passengers, unauthorized and unforeseen by it, was the sole, independent and proximate cause, yet, it must be admitted that if appellant's agents were likewise guilty of any negligence which could be said to be a proximate cause of, or to be directly connected with the proximate cause of such injury, the fact that an act of a passenger was also a contributory cause to such injury, would not in and of itself relieve appellee from liability. *North Chicago St. R. Co.* v. *Cook* (1893), 145 Ill. 551, 556, 558, 33 N. E. 958; *Winona, etc., R. Co.* v. *Rousseau* (1911), 48 Ind. App. 248, 93 N. E. 34, 1028 and authorities there cited. Hence in its last analysis the real question in issue according to the statements of both appellant and appellee, was, whether appellee exercised toward appellant when she was attempting to board its car, that high degree of care which the law in such cases requires of carriers of the kind here involved toward their passengers.

It was to this particular question and issue that instruction No. 1, was directed and particularly applicable, hence its importance and controlling influence on the result of the case is apparent. It follows: Instruction No. 1 "* * * If you find from the evidence that the conductor was inside of the car performing his duties at the time the car stopped on the north side of the intersection of Wenzel and Jefferson Streets in the city of Louisville, Kentucky, for the purpose of allowing the plaintiff to board it and that the conductor immediately started back to the rear platform of the car for the purpose of seeing that the plaintiff safely got aboard the car before it again started, and that while making his

way back there for that purpose, and without having any reason to apprehend that a passenger would give the starting signals before he got back to the rear platform, the car started in response to a signal, not given by any of the employes of said car or any other person authorized to do so, but by a passenger standing on the rear platform, which the motorman supposed to come from the conductor, then you are instructed the plaintiff cannot recover in said circumstances and your verdict should be for the defendant.''

As applicable to this question the courts of appeal of this State have expressed and announced the following rules or principles: (1) ''A common carrier of passengers, is not, under the law, an insurer of their safety, nevertheless, the law requires of it the exercise of the *highest degree of care* consistent with the mode of its conveyance and the practical prosecution of its business for the safety and protection of its passengers, and it is bound to continue the exercise of such care until its passengers have alighted from the cars at their destination, at the usual place of stopping the cars.'' (Our italics.) *Indiana Union Traction Co.* v. *Keiter* (1911), 175 Ind. 268, 275, 92 N. E. 982. To the same effect, but more directly applicable to the particular facts of this case is the language of the court in the case of *North Chicago St. R. Co.* v. *Cook, supra,* quoted with approval by our Supreme Court in the case of *Louisville, etc., Traction Co.* v. *Korbe* (1911), 175 Ind. 450, 93 N. E. 5, 94 N. E. 768. The court in that case in considering the duty that the carrier, through its conductor, owed to the plaintiff said, ''Carriers of passengers are held to the exercise of the utmost or highest degree of care, skill and diligence for the safety of the passenger that is consistent with the mode of conveyance employed. The car or train was in control of the conductor, and he was required to know, if by the exercise of due care, caution and diligence in the discharge of his duties he could

know, whether any person was attempting to get *on or off* his train or car, before permitting the same to start in such manner as would be liable or likely to injure a person so getting *on or off* the same." See, also, *Winona, etc., R. Co.* v. *Rousseau, supra; McCurdy* v. *United Trac. Co.* (1900), 15 Pa. Super. Ct. 29; *Leavenworth Elec. R. Co.* v. *Cusick* (1899), 60 Kan. 590, 57 Pac. 519, 72 Am. St. 374; 6 Am. Neg Rep. 282; *Nichols* v. *Lynn, etc., R. Co.* (1897), 168 Mass. 528, 47 N. E. 427; *Haluptzok* v. *Great Northern R. Co.* (1893), 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739; *Booth* v. *Mister* (1835), 7 Car. & P. *66; *Metropolitan R. Co.* v. *Jones* (1893), 1 App. Cas. D. C. 200; *Birmingham, etc., R. Co.* v. *Smith* (1889), 90 Ala. 60, 8 South. 86, 24 Am. St. 761; 2 Thompson, Negligence §1959; 3 Thompson, Negligence §3523; Nellis, Street Railroads 463.    (2) "When a person desires to take passage on a street-car, and signals such car, indicating his intention, if such person be at a point or place on the line where such car is required to stop to receive passengers, if the car is stopped   *  *  *,   the company thus extends an invitation to such person to become a passenger, and he has a right to enter. *He becomes a passenger under such circumstances as soon as he steps upon the running-board or steps of the car, and the company is bound to treat him as a passenger.* This proposition presupposes the fact that the employes in charge of the car are aware of the facts stated." (Our italics.) *Citizens St. R. Co.* v. *Merl* (1901), 26 Ind. App. 284, 290, 59 N. E. 491, and authorities there cited.    (3) It is the duty of a common carrier operating a street car to give to persons intending to become passengers thereon at its usual stopping places, a reasonable opportunity to board the same. *Citizens St. R. Co.* v. *Merl, supra,* 291, and authorities there cited.    (4) "Ordinarily, negligence is a question of fact for the jury to determine from the evidence and not for the court to declare as a matter of law   *  *  *

'and it is only when the standard of duty is fixed and certain, or where the negligence is so clear and palpable that no verdict could make it otherwise, that the question of. negligence becomes one of law and not of fact.' '' *Indiana, etc., Trac. Co.* v. *Sullivan* (1913), *ante* 239, 101 N. E. 401, and authorities there cited. See, also, *Buehner Chair Co.* v. *Feulner* (1905), 164 Ind. 368, 373, 73 N. E. 816 and authorities there cited; *Anderson* v. *Citizens St. R. Co.* (1895), 12 Ind. App. 194, 196, 38 N. E. 1109; *Hoggatt* v. *Evansville, etc., R. Co.* (1892), 3 Ind. App. 437, 442, 29 N. E. 941; *Pennsylvania Co.* v. *Hensil* (1880), 70 Ind. 569, 575, 36 Am. Rep. 188; *Wabash, etc., R. Co.* v. *Locke* (1887), 112 Ind. 404, 422, 14 N. E. 391, 2 Am. St. 193.     (5) ''It has always been held that where the court directs a particular verdict, if the jury should find from the evidence certain facts to exist, the instruction must embrace all the facts and conditions essential to such a verdict.'' *American, etc., Tin Plate Co.* v. *Bucy* (1909), 43 Ind. App. 501, 87 N. E. 1051 and cases cited. See, also, *Lake Shore, etc., R. Co.* v. *Johnson* (1909), 172 Ind. 548, 550, 551, 88 N. E. 849, and cases cited.

An application of the foregoing principles to the instruction under consideration can lead to but one conclusion. It completely ignored the possibility of appellee's agents being guilty of negligence in any respect other than as therein indicated, and by directing the jury to return a verdict for appellee in case it found the facts enumerated therein, the court in effect assumed that such agents were not negligent in any other respect and thereby and to such extent invaded the province of the jury and determined for the jury one of the questions, which, under the law, it was the jury's right and duty to determine. Upon this question our Supreme Court in the case of *Wabash, etc., R. Co.* v. *Locke, supra,* at page 422 said: ''It would be a serious inroad on the province of the jury, if, in a case where there are facts from which negligence may

reasonably be inferred, the judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred.''

We do not mean to say that the court may not 6. assume or state hypothetically in an instruction, the facts within the issues and evidence, and direct the jury to return a verdict for the one party or the other in case it finds that such facts have been proven; but when the court undertakes to state the facts upon which a verdict may be returned for either party, it must state in its instruction every fact essential and necessary to a recovery by the party in whose favor the verdict is directed.

Under the instruction in question the appellee was 7. entitled to a verdict even though the motorman may have seen and known that appellant was not on the car, but in a place of danger when he, the motorman, received the starting signal and started the car, and appellee was likewise entitled to recover though such motorman may have carelessly and recklessly started the car with an unusual and unnecessary jerk and suddenness, and though the conductor may have heard the starting signal given by the passenger in time to have countermanded it before the car started. In discussing an instruction involving this last proposition the Supreme Court of Illinois in the case of *North Chicago St. R. Co.* v. *Cook, supra,* said: ''It is also insisted that the court erred in giving the following instruction: 'If the jury believe from the evidence that some person not in the employment of the defendant company rung the bell which started the train at the time in question, still that fact will not exempt the defendant company from liability in this case; provided, the jury believe from the evidence that the conductor could, by use of due care and diligence, have countermanded the unauthorized signal for starting the train in time to have prevented any injury to the plaintiff, if he, the conductor, had exercised due care and diligence in the discharge of his duties; and, provided

the jury believe from the evidence the plaintiff at the time in question was in the exercise of reasonable care and diligence for his own safety.' The point made is, that the instruction 'failed to submit to the jury the question as to whether or not reasonable care on the part of the conductor required that he should have countermanded the signal, even if he could have done so in time to have prevented the injury to the plaintiff.' And that, as a matter of law, the fact that the conductor might, 'by the exercise of due care and diligence, have countermanded the signal,' even if the conductor did not know, and had no reasonable ground to believe, that any one was attempting to get upon the car, would make appellant liable, although the signal had been given by a stranger. We see no objection to the instruction. It was the duty of appellant to stop its car a sufficient length of time to enable appellee to get fully and safely on the same.'' See, also, *Nichols* v. *Lynn, etc., R. Co. supra.* We think it clear under the numerous authorities herein cited that the facts, hypothetically stated by the court, in the instruction in question were not such as to enable it to say conclusively and as a matter of law that the verdict should be for the appellee in case the jury found such facts to be proved; but, assuming such facts to be true, it still remained to be determined under the evidence, whether defendant's servants in *all respects other than those included in the instruction* had observed that "*utmost and highest degree of care,* skill and diligence,'' for appellant's safety when she was attempting to board appellee's car required by the authorities before cited, and for this reason the giving of the instruction was clearly error. *Pittsburgh, etc., R. Co.* v. *Wright* (1881), 80 Ind. 236; *American, etc., Tin Plate Co.* v. *Bucy, supra; Lake Shore, etc., R. Co.* v. *Johnson, supra; Winona, etc., R. Co.* v. *Rousseau, supra.* Nor is the instruction of that kind which may be added to or cured by other instructions given in the case. *Lake Shore, etc., R. Co.* v. *Johnson, supra,* and cases cited;

*American, etc., Tin Plate Co.* v. *Bucy, supra,* 504, 505 and cases cited; *Pittsburgh, etc., R. Co.* v. *Wright, supra.*

Appellee insists that the instruction, if erroneous, is shown to be harmless by the answers of the jury to interrogatories. In answer to a similar contention the Supreme Court in the case of *Louisville, etc., Traction Co.* v. *Korbe, supra,* at page 457, said: "The court having erred in giving the instruction, the legal presumption follows that such error was prejudicial to appellant and the burden is on appellee to show the contrary by the record." See, also, *Cleveland, etc., R. Co.* v. *Case* (1910), 174 Ind. 369, 91 N. E. 238. These answers rather tend to show that, in the return of its general verdict, the jury followed the directions given in the instruction, because such answers show that the jury found, in effect, the particular facts to exist which the instruction told it would authorize such verdict. The answers found nothing upon the subject of negligence as to the manner of the starting of the car, nothing upon the subject of what actual knowledge appellee's motorman had as to whether appellant was on the car or in a place of danger when he started it and nothing upon the subject of what the conductor did or, by the exercise of that high degree of diligence and care required of him, could have done in the way of countermanding, before the car was started, the starting signal so given by the passenger. As in the case just quoted from, so in this "the answers of the jury to interrogatories propounded to it do not sustain the contention of appellee that the error in giving the instruction was harmless."

Lastly, it is insisted, in effect, that these findings when supplemented by the evidence, clearly show that appellee was not harmed by the instruction, and that the presumption indulged in favor of the general verdict and the judgment thereon requires us to search the record to affirm and that such search will conclusively show

that appellee was not harmed. Appellant controverts appellee's contention that we should look to the evidence to ascertain whether harm resulted from an instruction which is erroneous, and relies on the case of *Wooters* v. *Osborn* (1881), 77 Ind. 513, 515. This case lends support to appellant's contention, but we do not think that it goes to the extent claimed. Of course this court will not weigh evidence to ascertain whether an erroneous ruling has been harmful, and, as above indicated, the burden is on appellee to show that no harm resulted to appellant from the giving of the erroneous instruction. Yet, if we could say that appellee has shown by undisputed evidence in the record that appellant's injury was due solely and entirely to the negligence in giving the starting signal and that there was no evidence of any kind showing any negligence on the part of appellee, or its agents, that in any way contributed to such injury, we think the rule which requires us to search the record to affirm, would require us, in such case, to say that such instruction was harmless and refuse to reverse on account of its having been given. However, when we look to the evidence we find, as before indicated, that there was affirmative evidence showing that when appellant had one foot upon the car step and her hand on the railing, ready to get upon the car, that it started *very suddenly with a jerk* and that she was thereby thrown to the ground. This evidence was susceptible of the inference that it was not the starting of the car alone, which caused appellant's fall therefrom, but that the suddenness of the starting, the jerk of the car when it started, may have been at least a contributory cause of such fall, and hence that appellee's agents, in respect to the manner of the starting of the car, at least, did not exercise the highest degree of diligence and care which the authorities before cited required of it. *Winona, etc., R. Co.* v. *Rousseau, supra.* The appellant was entitled to have the jury draw such inferences as it might

draw · from such evidence. The instruction in question ignored the existence of such evidence, and the possible inference that might be drawn therefrom and to this extent, at least, invaded the province of the jury and failed to include in the instruction all the essentials of that high degree of care and diligence on the part of the agents of appellee which the law makes necessary in such cases before the appellee was entitled to be relieved from liability.

In view of the conclusion reached, we deem it unnecessary to set out or discuss the second instruction objected to, further than to say that in its main features it has the approval of the Supreme Court in the cases of: *Richardson* v. *Coleman* (1892), 131 Ind. 210, 29 N. E. 909, 31 Am. St. 429; *Keesier* v. *State* (1900), 154 Ind. 242, 247, 56 N. E. 232; *In re Darrow and Talbot* (1910), 175 Ind. 44, 58, 59, 92 N. E. 369. One of its statements may possibly be open to criticism, but when considered in its entirety, we do not think it contained any announcement that could be said to be prejudical or harmful, to appellant's cause, and hence its giving did not, in any event, constitute reversible error.

Because of the error in giving instruction No. 1, the motion for new trial should have been sustained. The judgment is therefore reversed with instructions to the trial court to grant a new trial, and for further proceedings consistent with this opinion.

NOTE.—Reported in 102 N. E.· 455. See, also, under (1) 6 Cyc. 602; (2) 6 Cyc. 611, 612; (3) 6 Cyc. 536, 538; (4) 6 Cyc. 612; (5) 29 Cyc. 634; (6, 8) 38 Cyc. 1629; (7) 38 Cyc. 1632; (9) 3 Cyc. 386; (10) 38 Cyc. 1815; (11) 38 Cyc. 1639, 1809; (12) 38 Cyc. 1626, 1627, 1632. As to proximate and remote causes of injury from negligence, see 50 Am. Rep. 569; 36 Am. St. 807; see, also, note to *Heney* v. *Dennis* (Ind.), 47 Am. Rep. 381. As to carrier's duty to give notice of starting of train, see 7 Am. St. 835. As to who are passengers and when they become such, see 61 Am. St. 75. As to negligence in starting street car with jerk, see 23 L. R. A. (N. S.) 891; 34 L. R. A. (N. S.) 225. For presumption of negligence from sudden start, stop, jolt, or jerk of car, see 13 L. R. A. (N. S.) 611; 29 L. R. A. (N. S.) 814. On the liability of

a street car company for injury to alighting passenger by starting of car on signal of fellow passenger, see 27 L. R. A. (N. S.) 764; 37 L. R. A. (N. S.) 724; 21 Ann. Cas. 1331. As to the effect of signalling car to make one a passenger, see 13 L. R. A. (N. S.) 283; 25 L. R. A. (N. S.) 408.